UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR GLICK TRUCK SALES, INC.,

                                    Plaintiff,                    Case No. 11-CV-2824 (KMK)

        -v-                                                       OPINION AND ORDER

STUPHEN EAST CORP. & TRAVELERS
CASUALTY AND SURETY COMPANY OF
AMERICA,
                                    Defendants.

Appearances:

Gerald Orseck, Esq.
Orseck Law Offices
Liberty, New York
*Counsel for Plaintiff*

Gary D. Silver, Esq.
Stoloff & Silver, LLP
Monticello, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        "Inveterate UCC geek[s]" are advised to draw near:  On Plaintiff's Motion for

Reconsideration, the Court must revisit this "classic" Article 9 case.  Tim Zinnecker, *You Had

Me at "UCC"*, The Faculty Lounge (Apr. 1, 2013, 10:16 a.m.), http://www.thefaculty

lounge.org/2013/04/you-had-me-at-ucc.html.

        Plaintiff and Defendant each claim to possess a superior interest in two truck chassis.

Plaintiff is the consignor of the chassis; Defendant provided surety bonds to two Fire Districts

that purchased the chassis.  In a previous Opinion and Order dated December 18, 2012, the Court

found that the Fire Districts qualified as buyers in the ordinary course under the Uniform

Commercial Code ("the UCC"), which governed this dispute; that Defendant could assert the

Districts' interests in the chassis; and that Defendant's interest in the chassis was superior to

Plaintiff.  (Dkt. No. 51.)  Plaintiff seeks reconsideration of the Court's Order.

Plaintiff's Motion is denied.  First, this is the paradigmatic case that the strict rules

governing motions for reconsideration were written to prevent:  Plaintiff had both a pre-

argument and, over Defendant's objections, a post-argument opportunity to brief the factual and

legal issues that Plaintiff raises in its instant Motion for Reconsideration.  *See Schuster v.

Draone Classic Motor Cars*, No. 99-CV-2000, 2000 WL 1585685, at *2 (Oct. 25, 2000)

(denying plaintiff's request for attorney's fees, where plaintiff had an initial opportunity to

establish fees but "did not take advantage of it"; where the Court "permitted [plaintiff] to remedy

that failure" but his response was "neither timely nor sufficient"; and where Plaintiff sought "a

third bite at the apple . . . in a manner directly proscribed by the rules of this Court").  Second,

for reasons that the Court will explain, Plaintiff's arguments are substantively without merit.

## I.  Background

The Court assumes the Parties' familiarity with the factual and procedural history of this

case, as described in *Arthur Glick Truck Sales v. Stuphen East Corp.*, 914 F. Supp. 2d 529

(S.D.N.Y. 2012).  The Court will summarize the relevant history here only briefly.  Plaintiff was

an ongoing consignor of fire truck chassis to Wolverine Fire Apparatus Company ("Wolverine"),

which built completed fire trucks on the chassis and then sold them to fire districts.  This dispute

arises from contracts that Wolverine entered into with the Beaverkill Valley Fire District and the

Forest Waverly Fire Department ("the Fire Districts")—each for the sale of a completed fire

truck.  Defendant provided surety bonds to the Fire Districts guaranteeing Wolverine's

2

performance.  Wolverine ordered chassis for the trucks from Plaintiff.  Wolverine began construction, but went into bankruptcy prior to completing the fire trucks.  The Fire Districts filed claims on their respective surety bonds against Defendant; Defendant acquired the fire chassis from Wolverine's bankruptcy estate; Defendant arranged for completion of the fire trucks by other providers; and Defendant ultimately arranged for delivery of the completed fire trucks to the Fire Districts.  Plaintiff, which was to receive payment from Wolverine following the completed sale of the fire trucks to the Fire Districts, seeks damages from Defendant for the value of the two truck chassis, for which Plaintiff has never been paid.  In an Opinion and Order dated December 18, 2012, the Court granted Defendant's Motion for Summary Judgment against Plaintiff, finding that Defendant's interest in the chassis was superior to Plaintiff's.  *See Glick*, 914 F. Supp. 2d at 532.  Plaintiff filed a timely Motion for Reconsideration of the Court's grant of summary judgment.

## II. Discussion

### A. Standard of Review

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  *Pla v. Renaissance Equity Holdings LLC*, No. 12-CV-5268, 2013 WL 3185560, at *1 (S.D.N.Y. June 24, 2013) (internal quotation marks omitted).  "The standard for granting a motion for reconsideration under Local Rule 6.3 is strict, so as to avoid repetitive arguments on issues that have been considered fully by the Court."  *Sampson v. Robinson*, No. 07-CV-6890, 2008 WL 4779079, at *1 (S.D.N.Y. Oct. 31, 2008) (internal quotation marks omitted).  Furthermore, a "motion for reconsideration is not an opportunity for a losing party to

3

advance new arguments to supplant those that failed in the prior briefing of the issue." *VR Global Partners, L.P. v. Bennett* (*In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*), Nos. 06-CV-643, 07-CV-8686, 07-CV-8688, 2008 WL 4962985, at *1 (S.D.N.Y. Nov. 20, 2008). "Rather, to be entitled to reconsideration, a movant must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion, which, had they been considered might reasonably have altered the result reached by the court." *Id.* (internal quotation marks omitted); *see also Pla*, 2013 WL 3185560, at *1 ("Such a motion is appropriate where the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." (internal quotation marks omitted)). In other words, "[r]econsideration is appropriate only where there is an intervening change of controlling law, newly available evidence, or the need to correct a clear error or prevent manifest injustice." *In re Refco*, 2008 WL 4962985, at *1 (internal quotation marks omitted).

B. The Special Circumstances Meriting Reconsideration

At the outset, Plaintiff suggests that this case is a particularly appropriate candidate for reconsideration, because of "the complexity of the interplay between the [UCC] . . . and the motor vehicle registration statutes as enacted in similar, but not identical forms, by [New York, Wisconsin, and Michigan,]" and because the Court "decided the case upon grounds not urged or briefed by either party." (Pl.'s Mem. of Law (A) for Recons.; Local Rule 6.3 and (B) for Similar Relief in Accordance with FRCP 59 & 60 ("Pl.'s Recons. Mem.") 1.)

The Court is surprised and disappointed by Plaintiff's suggestions—both that the issues were too "complex[]" to be effectively briefed in the first (or second) round and that the Court decided the case on grounds not briefed by the Parties. In fact, Defendant has consistently and

4

correctly maintained that pursuant to Article 9, section 311 of the UCC, the UCC's priority rules, not the state certificate-of-title statutes, govern the Parties' interests in the chassis.  (*See* Def.'s Mem. in Supp. of Summ. J. ("Def.'s SJ Mem.") 1–2, 5–10 (arguing that the Party's interests are defined by Article 9 of the UCC); Def.'s Reply in Supp. of Summ. J. ("Def.'s SJ Reply") 4–7 (arguing that "Article 9 of the [UCC] governs the priority of interests in the chassis" (emphasis omitted); Def.'s Resp. in Supp. of Summ. J. to Sur-Reply 2–3 (arguing that pursuant to Article 9, section 311 of the UCC, the state certificate-of-title laws do not govern the Parties' interests); Letter from G. Silver to Court (Nov. 28, 2012) (arguing that even in Plaintiff's post-argument submission, Plaintiff failed to address the significance of section 311).)  Defendant has also consistently argued that each Fire District was, under the UCC, a buyer in the ordinary course of business and, consequently, possessed a superior interest in its respective chassis to Plaintiff's. (*See* Def.'s SJ Mem. 7–9 (arguing that Defendant "obtained the chassis from Wolverine's bankruptcy trustee for the [F]ire [D]istricts who were buyers[] in[] the[] ordinary course" (emphasis omitted)); Def.'s SJ Reply 7–8 (arguing that Fire Districts became buyers in the ordinary course upon identification of the chassis to the contracts between Wolverine and the Fire Districts).)  And Defendant has consistently argued that it could assert the Fire Districts' interests under equitable principles of subrogation.  (*See* Def.'s SJ Mem. 8–9 (arguing that Defendant, "in performing its obligation under the [surety bonds], has a right to assert any defense to [Plaintiff's] claim that the Fire Districts can assert").)  Plaintiff did not address any of these controlling propositions in its pre-argument memorandum of law or in its sur-reply Affidavit.  (*See* Pl.'s Mem. of Law; (a) in Opp'n to Def.'s Mot. for Summ. J.; and (b) in Supp. of Pl.'s Request, as Non-Movant, for Summ. J. ("Pl.'s SJ Mem."); Reply Aff. Of Todd Glick.)

Furthermore, at oral argument, Plaintiff seemed finally to realize that it had not yet addressed Defendant's arguments regarding the "interplay" between the UCC and the state certificate-of-title statutes.  Recognizing the weakness of its position, Plaintiff then requested leave to file a postargument brief to address this issue, notwithstanding the fact that Defendant had already fully briefed it.  Defendant quite reasonably objected, but the Court granted Plaintiff "*one more bite* at the proverbial apple," noting that Plaintiff was facing "third and long" on this issue.  (Hr'g Tr. 15, 19–22, Nov. 8, 2012 (emphasis added).)  The sur-reply that Plaintiff ultimately filed, however, merely rehashed separate arguments that Plaintiff had made in its initial brief.  (*See* Letter from K. Orseck to Court (Nov. 19, 2012).)

Finally, although the Court's analysis of the UCC differed from Defendant's in some respects, the differences primarily had to do with whether Plaintiff ever validly perfected its purchase money security interest in the chassis, and what effect Plaintiff's eventual proper filing had on the Parties' respective interests.  *See Glick*, 914 F. Supp. 2d at 541 (rejecting Defendant's argument that "Plaintiff missed its chance to perfect its interest in the chassis").  But the Court clearly adopted each of the controlling, above-cited propositions in granting Defendant's Summary Judgment Motion.  *See id.* at 538–41 (holding that under section 311, the UCC's priority rules, not the certificate-of-title statutes, governed the Parties' interests); *id.* at 544–49 (holding that under Michigan, New York, and Wisconsin law, the Fire Districts qualify as buyers in the ordinary course, as defined in the UCC); *id.* at 542–43 & n.18 (holding that Defendant could assert the Fire Districts' buyer-in-the-ordinary-course status as their subrogee).

In sum, because Plaintiff had numerous opportunities *before* the Court issued its Opinion to offer the arguments it now presses, Plaintiff's cry of "foul" rings hollow.  The burden therefore remains with Plaintiff to present a valid basis for reconsideration.

6

C. The Merits

      1. The Sales Contract Between Wolverine and the Fire Districts Became Null

      Plaintiff's first argument is that the Fire Districts lost buyer-in-the-ordinary-course status, because the sales contracts between Wolverine and the Fire Districts were "breached, rejected, rescinded, cancelled, discharged" or otherwise became "null and void."  (Pl.'s Recons. Mem. 4.) Plaintiff offers multiple variations of this argument, but each variation fails for two independent reasons.  First and independently, these claims are premised on both newly alleged facts—for example, that Defendant filed a proof of claim against Wolverine's bankruptcy estate—that were readily available to Plaintiff in the predecisional stage of the litigation, and various propositions of law that did not result from intervening changes in the law.  As such, these claims are strongly disfavored on a motion for reconsideration.  *See In re Refco*, 2008 WL 4962985, at *1 (explaining that "[r]econsideration is appropriate only where there is an intervening change of controlling law [or] newly available evidence").  The Court's analysis could stop there, as Plaintiff has provided no explanation, let alone justification, for failing to raise this point during the two rounds of briefing the Court permitted in connection with the Summary Judgment Motion.  *See Boakye-Yiadom v. Laria*, No. 09-CV-0622, 2013 WL 3094943, at *4 (E.D.N.Y. June 18, 2013) ("Because a motion for reconsideration is not an opportunity for defendants to present new arguments to the Court, this contention also fails."); *Nat'l Immigration Project of the Nat'l Lawyers v. U.S. Dep't of Homeland Sec.*, No. 11-CV-3235, 2013 WL 1947362, at *4 n.1 (S.D.N.Y. May 7, 2013) (rejecting argument construed as a motion for reconsideration, because "the [movant] fail[ed] to point to any new facts or intervening precedent, in the absence of which it [could] not advanc[e] new facts, issues, or arguments not previously presented to the court" (final alteration in original) (internal quotation marks omitted).

7

Second, as the Court will explain, each variation of Plaintiff's argument regarding the nullification of the contracts is without merit.

Plaintiff first claims that Defendant's filing of a proof of claim against Wolverine's bankruptcy estate implied the Fire Districts' rescission of their sales contracts with Wolverine. This argument fails.  On the one hand, "rescission" is a term of art that describes an equitable action by a party to nullify a contract.  The Court has been unable to find (and Plaintiff has not cited) any decision from Michigan, New York, or Wisconsin suggesting that filing of proof of claim against a bankruptcy estate is functionally tantamount to rescission of a contract with the debtor.  Indeed, Defendant's proof of claim against Wolverine's bankruptcy estate was a claim for damages based on the contracts Wolverine executed with the Fire Districts; the filing of the proof of claim therefore was inconsistent with rescission of the contracts.  *See Evangelical Presbyterian Church v. Am. Fidelity Assurance Co.*, No. 299625, 2012 WL 104734, at *2 (Mich. Ct. App. 2012) (per curiam) (affirming trial court's decision that, under Michigan law, rescission was unavailable where, among other things, "monetary damages were sufficient to compensate Plaintiff for its alleged damages"); *see also Maldonado v. Valsyn*, 390 F. App'x 27 (2d Cir. 2010) (explaining that "[u]nder New York law, the rescission of a contract is an extraordinary remedy" which is unavailable "[w]here there is an adequate remedy at law, i.e., money damages" (internal quotation marks omitted)); *Wickenhauser v. Lehtinen*, 734 N.W.2d 855, 862 (Wis. 2007) (explaining that under Wisconsin's "election of remedies doctrine" a party "may elect either to rescind the contract and seek rescissory damages or to affirm it and seek damages arising from the breach of contract" (footnotes omitted)).  On the other hand, it is not clear that the term "rescission" is at all appropriate here, where the contracts at issue were governed by the UCC.  *See* UCC § 2-608 cmt. 1 (noting that the relevant provision "no longer speaks of

8

"rescission");[1] *see also McCoy v. S. Energy Homes, Inc.*, No. 09-CV-1271, 2012 WL 1409533, at *8 n.10 (S.D.W. Va. Apr. 23, 2012) ("It is generally recognized that the UCC has rejected the use of the term rescission.").  Instead, the inquiry is whether the Fire Districts "revoke[d] [their] acceptance."  *See* UCC §§ 2-608, 2-711; *see also Prichard Enters. Inc. v. Adkins*, 858 F. Supp. 2d 576, 590 (E.D.N.C. 2012) ("Under the UCC, the common law doctrine of rescission is equivalent to "'revocation of acceptance.'").  And the Court has found no caselaw, and Plaintiff has provided none, suggesting that a party's filing of a proof of claim against a debtor is tantamount to revocation of acceptance.

Plaintiff next cites certain provisions of Article 2 of the UCC to argue that the sales contracts between Wolverine and the Fire Districts were "unenforceable."  These provisions set forth certain rights that a buyer may assert against a nonperforming seller through litigation.  *See* UCC §§ 2-711 (setting forth buyer's rights against nonperforming seller), 2-502 (describing right to recover), 2-716 (describing right to replevin); *see also* Linda J. Rusch, *Property Concepts in the Revised U.C.C. Articles 2 and 9 Are Alive and Well*, 54 SMU L. Rev. 947, 949 (2001) (explaining that these rights "are not self-help remedies" and require a buyer "effectively [to] assert its rights against the seller through litigation").  The Fire Districts did not avail themselves of these remedies, and Defendant has never relied on them as a basis for its superior interest.  According to Plaintiff, by failing to exercise these remedies affirmatively against Wolverine, the Fire Districts, and, by extension, Defendant, lost any right to enforce the contracts.

---

[1] In its previous Opinion, because the Parties disputed whether the UCC provided the governing framework, the Court cited UCC provisions by specific Michigan, New York, and Wisconsin statutory provisions.  Here, because the controlling nature of the UCC is no longer in question, the Court simply cites the relevant generic UCC provision.

9

But the Fire Districts effectively bypassed initiating litigation against Wolverine for recovery or replevin by contracting, through Defendant, with Wolverine's bankruptcy estate for release of the chassis.  The method by which the Fire Districts obtained the fire trucks may not have been contemplated by the UCC, but Plaintiff points to nothing in the UCC or the caselaw to suggest that a buyer loses its rights or its status under the UCC by pursuing nonstatutory remedies.  Indeed, the protections afforded to a buyer in Article 9 of the UCC—including the protections codified in Article 9, section 320, which establish the superior interest of a buyer in the ordinary course against a consignor—are separate from the protections afforded to a buyer in Article 2 against a seller.  *See generally* Rusch, *supra*, 949–52 (explaining that Article 9 provides buyers with additional protections to those contained in Article 2).  Therefore, the fact that the Fire Districts did not utilize their Article 2 remedies does not preclude them from asserting that they nonetheless have a superior interest in the fire trucks, so long as they qualify as buyers in the ordinary course.

The Court held that the Fire Districts so qualified in its previous Opinion, but the Article 2 provisions relied on by Plaintiff also suggest an argument, apparently unrecognized by Plaintiff, that the Fire Districts cannot be buyers in the ordinary course.  Under the UCC, a buyer in the ordinary course must, among other things, either have "possession of the goods or [have] a right to recover the goods from the seller under Article 2."  UCC § 1-201(9).  The Parties did not previously address—and consequently the Court did not previously consider—whether the Fire Districts satisfied either part of this requirement.[2]

_____

[2] Indeed, had Plaintiff raised this argument in its initial Memorandum of Law, the Court might have requested briefing on some of the subsidiary issues the Court must now address—including whether the UCC encompasses constructive possession and whether the Fire Districts took constructive possession of the chassis.  But because the case is now before the

10

With respect to possession, it is abundantly clear that the Fire Districts did not *actually* possess the completed fire trucks, which were, at all times relevant to this dispute, in Wolverine's physical possession.  But the UCC also recognizes "constructive possession."  *See Havens Steel Co. v. Commerce Bank, N.A.* (*In re Havens Steel Co.*), 317 B.R. 75, 87–88 (Bankr. W.D. Mo. 2004) (interpreting "possession" as used in the UCC to encompass "constructive possession" based on the UCC's text, comments, and history, and finding that buyer was in constructive possession where the buyer had paid for, and received title to, the goods in question); *see also United Bank of Iowa v. Indep. Inputs* (*In re W. Iowa Limestone, Inc.*), 538 F.3d 858, 863–65 (8th Cir. 2008) (holding, under Iowa law, that "'possession' as used in [the UCC's definition of buyer in the ordinary course] includes constructive possession"); *Speth v. Witham Farms Feedyard* (*In re Sunbelt Grain, WKS, LLC*), 427 B.R. 896, 905 (D. Kan. 2010) (same, applying Kansas law).[3]  And the Court concludes that the Fire Districts took constructive possession of the truck chassis upon identification of the chassis to the sales contracts.  Each Fire District paid Wolverine nearly the entire purchase price for a completed fire truck—i.e., more than the purchase price for a truck chassis.  *See Glick*, 914 F. Supp. 2d at 532–33 (noting that Beaverkill Fire District paid Wolverine $241,611 of the $268,457 purchase price for a completed truck and that Waverly Fire District paid Wolverine $156,636 of the $159,636 purchase price of

_____

Court in the posture of Plaintiff's Motion for Reconsideration, and because this argument (which Plaintiff raised only obliquely) is not an appropriate basis for reconsideration, the Court is unwilling to delay resolution of this dispute further.  *See Schuster*, 2000 WL 1585685, at *2 (holding that plaintiff did not get a third chance to litigate an issue, especially "in a manner directly proscribed by the rules of [the] Court").

[3] The Court was unable to find any decisions addressing whether, under Michigan, New York, or Wisconsin law, the revised definition of buyer in the ordinary course encompasses constructive possession.  The Court therefore has relied on persuasive authority: decisions interpreting the identical UCC provision under Missouri, Iowa, and Kansas law.

a completed truck, and further noting that the chassis cost $94,450 and $71,850 respectively).

Moreover, "agency principles should be applied to determine whether a party . . . should be

considered to have constructive possession."  *In re Havens Steel*, 317 B.R. at 87.  And those

principles suggest that the Fire Districts were in constructive possession of the chassis:

Wolverine ordered each chassis, and was building each fire truck, according to the respective

Fire District's specifications.  *See Glick*, 914 F. Supp. 2d at 542 n.17 ("Each purchase order

provides the name of the purchasing Fire District as well as that District's specifications—for

example, the chassis's color, wheelbase size, and other measurements."); *see also In re W. Iowa

Limestone*, 538 F.3d at 866 (noting that, "where the parties agree[] that one would hold direct

physical control for another for the purpose of doing some act for the owner, the owner retain[s]

constructive possession"); *cf. In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th

Cir. 2008) (explaining that a "principal-agent relationship[]" exists in the context of the

government-contractor defense, "where the agent ha[s] no discretion in the design process and

completely follow[s] government specifications").  It is true that the Fire Districts did not take

title to the truck chassis.  *See Glick*, 914 F. Supp. 2d at 532, 544.  But the Court has already

explained why taking title is unnecessary for a buyer to satisfy the "good faith" requirement of a

buyer in the ordinary course, *see id.* 544–49, and it would be incongruous to hold that taking title

is necessary for a buyer to satisfy the "possession" requirement of a buyer in the ordinary course.

*See In re Sunbelt Grain*, 427 B.R. at 906 (interpreting *In re Havens Steel* and *In re Iowa

Limestone* to support the proposition that constructive possession exists, where a buyer has made

"prepayment" for the goods, and where the goods "have been identified to the contract"); *cf. In

re Havens Steel*, 317 B.R. at 87 (interpreting "possession" flexibly to "advance[] the apparent

goal . . . [of] provid[ing] [buyer-in-the-ordinary-course] protection to innocent buyers").[4]

In short, because the Fire Districts took constructive possession of the truck chassis, they qualify as buyers in the ordinary course, and they accordingly have a superior interest in the chassis independent of their right to recover or to replevin under Article 2 of the UCC.[5]

Plaintiff next agues that each sales contract was materially breached by both parties —Wolverine never finished construction of the trucks or delivered them; the Fire Districts never completed payment—resulting in their rescission or nullification of the contracts. Here too,

---

[4] To be clear:  The Court does not address whether the Fire Districts had the "right" to recover the fire trucks.  The Court has already explained that Plaintiff's argument regarding Article 2 of the UCC is an inappropriate basis for reconsideration, and that, in the alternative, the argument is without merit, because the Fire Districts took constructive possession of the truck chassis.  A further layer of "in the alternative" analysis is unnecessary.  But the Court notes that at least one court has held that "right" as used in this provision of the UCC can derive either from the common law or from Article 2 of the UCC.  *See In re Havens Steel*, 317 B.R. at 84 (explaining that "a party that can establish" either "a common law" or "an Article 2–based" right to recover "may qualify as a [buyer in the ordinary course]").

[5] Plaintiff separately argues that "the trustee in the Wolverine bankruptcy rejected the contracts between Wolverine and the Fire Districts by not assuming them."  (Pl.'s Recons. Mem. 6.)  In support for this proposition, Plaintiff cites "11 USC 365," without further explanation, and, broadly, "ECF history 09-32985 (*In re Wolverine Fire Apparatus Co.*)."  *Id.*  This simply will not do.  The Court no more expects to be directed to review an entire case history on ECF for a specific factual proposition than it expects to be directed to review "relevant cases on Westlaw" for a specific legal proposition.  If Plaintiff believes there is record evidence supporting the proposition that Wolverine did not assume the sales contracts, it was required to cite a particular document, or portion thereof, from the docket and explain that document's significance.  *See* Fed. R. Civ. P. 56(c)(1) (directing that a party opposing a motion for summary judgment must cite "*particular parts of materials in the record* including depositions, documents, electronically stored information, [etc.]" (emphasis added)); *see also Lee v. Butts*, No. 11-CV-2358, 2012 WL 3115006, at *4 (S.D.N.Y. Aug. 1, 2012) (explaining that defendant's assertions were unsubstantiated, where defendant's briefing "force[d] the Court to comb the record, speculate, and do the litigant's work for him"); *accord Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 586–87 (N.D. Tex. 2012) (criticizing Plaintiff's citations to the court of his "entire response," and explaining that "[i]t is well settled that the court is not obligated to comb the record in search of evidence that will permit a nonmovant to survive summary judgment" (internal quotation marks omitted)).

Plaintiff has mistakenly relied on a common law–contracts concept, rather than addressing the

relevant UCC provision, which governs "[a]nticipatory repudiation."  *See* UCC § 2-610.  That

provision states that when a breaching party "repudiates [a] contract with respect to a

performance not yet due the loss of which will *substantially impair* the value of the contract to

the other," the aggrieved party may "await performance" for a "commercially reasonable"

amount of time; "resort to any remedy for breach"; and—in either case—"suspend" its own

performance.  *Id.*  (emphasis added); *see also Nutrisoya Foods Inc. v. Sunrich, LLC*, 641 F.3d

282, 288 (8th Cir. 2011) (explaining that the test for "substantial impairment" under the UCC is

"akin to the determination of a material breach under traditional contract law" (internal quotation

marks omitted)); *cf. Midwest Mobile Diagnostic Imaging, L.L.C. v. Dynamics Corp. of Am.*, 965

F. Supp. 1003, 1013 (W.D. Mich. 1997) (explaining that "substantial impairment" as used in

UCC provision governing rejection of nonconforming goods "may be judged by reference to the

concept of material breach under traditional contract law").  The comments to this provision

make clear that it applies whenever a party's action "renders performance impossible," although

"[i]t is not necessary for repudiation that performance be made literally and utterly impossible."

UCC § 2-610 cmts. 1, 2.  And the comments further make clear that "the aggrieved party is left

free to proceed *at any time* with [its] options under this section."  *Id.* cmt. 4 (emphasis added).

There is room for argument that, by failing to complete construction of the fire trucks for

the Fire Districts, Wolverine repudiated the sales contracts in a manner which substantially

impaired their value.  But, even if true, that repudiation did not nullify the contracts.  Instead,

Wolverine's repudiation entitled the Fire Districts to suspend their own performance, which they

did; to await performance, which they did; and to resort to any remedy for breach, which they

elected not to do.  In other words, the Fire Districts' conduct was permissible under the UCC and

14

does not deprive them of buyer-in-the-ordinary-course status. *See id.* cmt. 4 ("Inaction . . . by the aggrieved party may leave the matter open but it cannot be regarded as [bad faith by] the repudiating party."); *cf. Al-Misehal Commercial Grp., Ltd. v. Armored Grp. LLC*, No. 10-CV-1303, 2012 WL 1946833, at *2 (D. Ariz. May 30, 2012) (explaining that "[i]t does not make sense to treat anticipatory repudiation as a breach for purposes of the [statute of] limitations period . . . given the buyer's option to await performance").

Plaintiff next argues that the Fire Districts, through Wolverine, "[a]bandoned" the sales contracts by entering into "entirely new contracts"—i.e., the stipulations with the bankruptcy estate—"with different parties and very different terms" to purchase the fire trucks. (Pl.'s Recons. Mem. 7.) According to Plaintiff, this conduct "is absolutely demonstrative of the defendant's rescission and abandonment of the earlier contracts" and is "irresolvably at odds with the original contracts." (*Id.*) These assertions are unsupported by *any* authority: statutory, judicial, or secondary. Moreover, Defendant counters that the stipulations were not new sales contracts, but rather effected a release of the bankruptcy estate's and its creditors' interests in the chassis to avoid litigation. In the absence of authority to the contrary, Defendant has the stronger argument. The terms of the stipulations set forth that Defendant was merely acting to enforce the Fire Districts' rights as buyers in the ordinary course, rather than seeking to purchase the chassis according to new sales contracts. (*See* Def.'s Rule 56.1 Statement of Material Facts, Ex. C ¶¶ F, J, L, 3 (Beaverkill stipulation, which states that "Travelers asserts that Beaverkill is the owner of the truck," VIN 2NKHHN8X89M243581, "because Beaverkill purchased [it] in the ordinary course of business"; that "Travelers . . . asserts a priority in the chassis over [the estate and its creditors]," because "the chassis was sold to Beaverkill in the ordinary course of business"; that "[t]he parties wish to resolve any disputes that may be raised with the parties'

15

respective positions in a manner that preserves the parties' rights and interests in Wolverine";

and that in exchange for $42,000, the estate and its creditors "agree to the release of the

chassis . . . and claim no interest in the chassis . . . and agree that any claim or right they had to

the chassis itself is released"); *id.* Ex. D ¶¶ E, G, I, 2 (Forest Waverly stipulation including

functionally identical language).)

    2. Defendant Purchased the Trucks as a Surety, Not a Subrogee

       Plaintiff next argues that Defendant could not assert the Fire District's buyer-in-the-

ordinary-course status when it entered into the stipulations with the bankruptcy estate, because

its subrogation rights had not yet attached.  This argument, too, is precisely the wrong kind of

argument for Plaintiff to be making in this posture:  Plaintiff had numerous opportunities to brief

this argument prior to the Court's December 18, 2012 Opinion, and the law has not changed in

the interim.  *See In re Refco*, 2008 WL 4962985, at *1 (explaining that "[r]econsideration is

appropriate only where," among other conditions, "there is an intervening change of controlling

law").  Here too, the Court could deny Plaintiff's Motion on that basis alone.  *See Schuster*, 2000

WL 1585685, at *2 (explaining that a party is not entitled to a third bite at the apple); *see also

Boakye-Yiadom*, 2013 WL 3094943, at *4 ("Because a motion for reconsideration is not an

opportunity for defendants to present new arguments to the Court, this contention also fails").

       But Plaintiff's argument also fails on the merits.  Indeed, it is unclear to the Court why

Defendant's ability to assert the Fire Districts' rights *when Defendant entered the stipulations* is

the operative question.  Even if Plaintiff is correct that Defendant's surety rights had not yet

attached, *see In re RLI Ins. Co. v. N.Y. State Dep't of Labor*, 766 N.E.2d 934, 940 (N.Y. 2002)

("[T]his Court has long held that a *completing* surety succeeds under subrogation principles to

all rights that the obligee/owner has . . . ." (emphasis added)); *Garrity v. Rural Mut. Ins. Co.*, 253

16

N.W.2d 512, 514 (Wis. 1977) ("Ordinarily, subrogation does not arise until the debt has been fully paid."); *Morrow v. Shah*, 450 N.W.2d 96, 99 (Mich. Ct. App. 1990) ("Payment of the subrogated debt or liability is a prerequisite to attaining subrogation rights."), Defendant has since fulfilled its obligation to the Fire Districts, and thus may now assert the Fire Districts' rights against Plaintiff's collateral attack on the stipulations.  Plaintiff is correct that under principles of equitable subrogation, Defendant *also* could have paid the value of the bonds to the Fire Districts and then pursued the Fire Districts' claims against the Wolverine bankruptcy estate.  But Plaintiff has not demonstrated that doing so was Defendant's *only* recourse under the UCC or the equitable law governing subrogation.  *See Hartford Accident & Indem. Co. v. Used Car Factory, Inc.*, 600 N.W.2d 630, 632 (Mich. 1999) (explaining that under Michigan law equitable subrogation can apply in a "variety of contexts," because it "is a flexible, elastic doctrine of equity"); *accord In re Flamingo 55, Inc.*, 378 B.R. 893, 906 (Bankr. D. Nev. 2007) (explaining that because subrogation is an "equitable doctrine, it is to be flexibly applied").

17

<u>III. Conclusion</u>

At this point, the case has been going on for approximately two years; the Parties have

submitted two rounds of legal briefs, one of which included sur-replies; and the Court has heard

oral argument and issued two Opinions.  At some point, Plaintiff has to move on—either to the

appellate court or to the next case.  For now, however, the Clerk of Court is respectfully directed

to terminate the pending motion, (Dkt. No. 54); the case is to remain closed.

SO ORDERED.

Dated:          August_____, 2013
               White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

18

Service List:

Gerald Orseck, Esq.
Orseck Law Offices
1924 State Route 52, P.O. Box 469
Liberty, NY 12754
845-292-5800
orsecklaw@yahoo.com
*Counsel for Plaintiff*

Gary D. Silver, Esq.
Stoloff & Silver, LLP
26 Hamilton Avenue - P.O. Box 1129
Monticello, NY 12701
(845)-794-4300
garyd.silver@verizon.net
*Counsel for Defendant Travelers Casualty and Surety Company of America*

### III. Conclusion

At this point, the case has been going on for approximately two years; the Parties have submitted two rounds of legal briefs, one of which included sur-replies; and the Court has heard oral argument and issued two Opinions. At some point, Plaintiff has to move on—either to the appellate court or to the next case. For now, however, the Clerk of Court is respectfully directed to terminate the pending motion, (Dkt. No. 54); the case is to remain closed.

SO ORDERED.

Dated:        August ___, 2013
              White Plains, New York

                                        _____
                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

18

Service List:

Gerald Orseck, Esq.
Orseck Law Offices
1924 State Route 52, P.O. Box 469
Liberty, NY 12754
845-292-5800
orsecklaw@yahoo.com
*Counsel for Plaintiff*

Gary D. Silver, Esq.
Stoloff & Silver, LLP
26 Hamilton Avenue - P.O. Box 1129
Monticello, NY 12701
(845)-794-4300
garyd.silver@verizon.net
*Counsel for Defendant Travelers Casualty and Surety Company of America*

19